1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY COTTON, | Case No. 1:22-cv-00568-JLT-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT MEDINA'S MOTION FOR SUMMARY JUDGMENT REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES |
| v. | |
| MEDINA, *et al.*, | |
| Defendants. | AND |
| | ORDER GRANTING PLAINTIFF'S MOTION TO VIEW VIDEO |
| | (ECF Nos. 38, 49) |
| | OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Plaintiff Wesley Cotton is proceeding *pro se* and *in forma pauperis* (IFP) in this civil rights action filed pursuant to 42 U.S.C. § 1983. Defendant Medina moved for summary judgement, arguing that Plaintiff failed to exhaust his administrative remedies as to his failure to protect claim against her. (ECF No. 38). Plaintiff opposed the motion, arguing that Defendant Medina admitted in her answer that he exhausted his administrative remedies and that he did, in fact, exhaust his remedies by filing a grievance. (ECF No. 48). Plaintiff also filed a motion asking the Court to view the recording of his interview in relation to the grievance, as further evidence that he exhausted administrative remedies. (ECF No. 49).

1

For the reasons stated below, the Court grants Plaintiff's motion for the Court to view the video (ECF No. 49) and recommends that Defendant Medina's motion for summary judgment (ECF No. 38) be denied.

## I.   BACKGROUND

### A.  Complaint, Screening, and Answers

Plaintiff filed the Complaint commencing this action on May 11, 2022. (ECF No. 1). Plaintiff alleged that on March 19, 2022, two inmates engaged in a fistfight, and in response tower officers, who Plaintiff identified as Doe Defendants, fired two gas cannisters. The gas entered Plaintiff's caged enclosure, choking him and assaulting his eyesight. (*Id.* 3–5).[1] Defendant Medina did not fire the canisters, but failed to protect Plaintiff from the gas, and Plaintiff was not provided with medical care afterwards. (*Id.*)

After screening, the Court found that Plaintiff's Eighth Amendment excessive force claim against Doe Defendants and his failure to protect claim against defendant Medina should proceed past screening. (ECF No. 9 at 1). The Court also found that Plaintiff failed to state a claim for deliberate indifference to his serious medical needs, but gave him an opportunity to amend his complaint. (*Id.* at 9–12). Plaintiff chose to proceed on his original complaint without amending (ECF No. 10), the Court then issued findings and recommendations accordingly (ECF No. 11), which were adopted by the district court judge in full (ECF No. 15).

Plaintiff's complaint was served on Defendant Medina, who filed an answer on March 15, 2023. (ECF No. 23). In her answer, Defendant Medina admitted that "there is an administrative grievance process available to Plaintiff and admit[ted] that Plaintiff exhausted those administrative remedies." (*Id.* at 4).

Through discovery, Plaintiff learned the names of Doe Defendants (ECF No. 33) and moved to substitute them (ECF No. 39); the Court granted his motion and ordered service. (ECF No. 45). Formerly Doe Defendants, correctional Officers J. Barajas, G. Chacon, A. Guerrero, I. Sanchez, and B. Markin have appeared and filed their answer. (ECF No. 64).

---

[1] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

**B.  Defendant Medina's Motion for Summary Judgment (ECF No. 38)**

On August 25, 2023, Defendant Medina moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as to his failure to protect claim against her. (ECF No. 38). The motion and accompanying declaration from A. Vasquez ("Vasquez declaration"), a Grievance Coordinator with the California Department of Corrections (CDCR), set forth administrative grievance process that was available to Plaintiff at the time of the incident. (*Id.* 5–6; ECF No. 38-1 at 2–3). This process requires the inmate to submit a grievance in writing to the Institutional Office of Grievances (OOG) at their institution within 30 days of the incident grieved. (ECF No. 38 at 4). If the OOG identifies the grievance as an allegation of staff misconduct, as was the case here, that grievance is referred outside of the institutional grievance process to the CDCR's Office of Internal Affairs-Allegations Inquiry Management Section (OIA-AIMS), which provides a separate decision. (*Id.* at 5). That decision, in the form of a confidential report, is eventually returned to OOG, and exhausts all administrative remedies available to inmates for that claim. (*Id.*)

Defendant Medina concedes that within 30 days of the March 19, 2022 incident,[2] Plaintiff filed a grievance, which was assigned Log No. 246844. (*Id.*) The OOG issued a response to Grievance Log No. 246844 on April 26, 2022, indicating that Plaintiff's claim was identified as an allegation of staff misconduct, and that this decision exhausted all administrative remedies available to Plaintiff for this claim. (*Id.* at 5–6; *see also* ECF No. 38-1 at 10).

Defendant Medina argues that while Plaintiff's grievance does mention excessive use of force, Plaintiff's grievance "does not mention, let alone identify, any alleged misconduct committed by Defendant [Medina]. . . regarding his alleged failure to protect claim." (ECF No. 38 at 9). In addition to the grievance itself, Defendant cites a redacted copy of an excerpt from an OIA/AIMS investigation report, which summarizes Plaintiff's allegation as "Cotton alleged

---

[2] There is some disagreement between the parties as to the date of the grievance, but it is not material. The Vasquez Declaration and accompanying exhibits show that the grievance was received and logged in the system within 30 days of the incident (ECF No. 38-1 at 3, 6) and Defendant Medina does not dispute that it was timely.

he was subjected to excessive use of force when he was overwhelmed in a caged enclosure by chemical agents deployed by staff during an incident he did not participate in." (ECF No. 38 at 9; ECF No. 38-1 at 12). But in Plaintiff's complaint, Defendant Medina argues, he alleged that "after the gas canisters were fired, Defendant Medina ordered yard officers to 'lock Plaintiff inside a cage enclosure and to continue to force inmate/Plaintiff to the exposure of gas that breached Plaintiffs rec enclosure. All the while ignoring Plaintiffs pleas for medical aid.'" (ECF No. 38 at 10, quoting Complaint, ECF No. 1 at 4). Defendant Medina argues that Plaintiff's grievance did not contain enough factual specificity to put the prison on notice of the nature of the wrong for which the prisoner seeks redress. (ECF No. 38 at 10).

### C.   Plaintiff's Response to Motion for Summary Judgment (ECF No. 48) and Motion to View the Video (ECF No. 49)

Plaintiff filed opposition to Motion for Summary Judgment (ECF No. 48), arguing that Defendant Medina already admitted in her answer that he exhausted his administrative remedies (*id.* at 3, 6)[3] and that he did, in fact, exhaust his remedies by filing a grievance (*id.* at 4–6).[4] Throughout his response, Plaintiff mentions the video recording of his interview conducted on April 4, 2022, in connection with the grievance (hereinafter, "Grievance Interview"). (*Id.* at 3, 4, 5, 6.) Plaintiff argues that during that interview, he identified Sgt. Medina, her role, her denial of help and medical, and why he was harmed by her actions. (*Id.* at 3, 4, 5.)

In addition, Plaintiff filed a separate motion asking the Court to view the recording of the Grievance Interview, as further evidence that he exhausted his remedies. (ECF No. 49).

### D.   Defendant's Reply (ECF No. 52)

In her Reply, Defendant Medina notes that Plaintiff concedes that an administrative grievance process was available to him, that he filed a grievance, which was assigned log

---

[3] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

[4] Plaintiff's references to exhibits in his Response (ECF No. 48) appear to refer to exhibits filed with his accompanying Motion to View Video (ECF No. 49).

#26844, and that he was interviewed in connection with that grievance, and that this interview was recorded. (ECF No. 52 at 2).

Defendant Medina disputes, however, that Plaintiff has demonstrated that the grievance and his interview set forth enough facts related to his claim against Defendant Medina. (*Id.* at 2–3). She argues that in the Grievance Interview, "Plaintiff makes *no* mention of Defendant Medina and/or any her actions, inactions, or conduct that would otherwise support his failure to protect claim against her." (*Id.* at 3). Defendant lodged a copy of Grievance Interview with the Court and also asks the Court to "listen to the recording and make its own determination." (*Id.*).

As to her concession that Plaintiff has exhausted administrative remedies in her Answer, Defendant Medina argues that the Court should reject it, because "[t]o the extent Defendant's answer took any position on exhaustion, not one response concerned any claim that Defendant failed to protect Plaintiff." (*Id.* at 3, n.3).

Defendant Medina maintains that "Plaintiff has failed to present evidence sufficient to put the prison on notice that Defendant Medina in any way failed to protect Plaintiff," and cites several of her responses to Court's previous orders showing that "she has never had any interaction with Plaintiff, was not assigned to any yard at the time of the incident of which Plaintiff complains of in this case, and had no role in responding to the incident." (*Id.* at 3).

## II.    LEGAL STANDARDS

### A.  Summary Judgment

A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca (Albino II)*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

6

**B. Exhaustion**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 119–1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736 (2001); *see Ross v. Blake*, 578 U.S. 632, 643 (2016).

There are no "special circumstances" exceptions to the exhaustion requirement. *Ross*, 578 U.S. at 648. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . ..
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . ..
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . .. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 643–44 (internal citations omitted).

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).

On a defendant's motion for summary judgment for failure to exhaust, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* However, "the ultimate burden of proof remains with the defendant." *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005). The failure to exhaust in compliance with section 1997e(a) of the PLRA is an affirmative defense that defendants have the burden of raising and proving. *Jones*, 549 U.S. at 216.

## III.     DISCUSSION

### A.  Plaintiff's Motion to View Video

Plaintiff asks this Court to view the recording of his Grievance Interview. Plaintiff had the opportunity to view it (ECF No. 49 at 20), and neither Plaintiff nor Defendant Medina raise any objections to its use as an exhibit in resolving the motion for summary judgment or raise any concerns about its authenticity. In fact, both Plaintiff and Defendant Medina urge the Court to view the video and therefore, agree that the video is relevant and probative evidence on the issue of exhaustion of administrative remedies. (ECF No. 49 at 1; ECF No. 52 at 3).

Courts may disregard a party's version of events if it contradicts undisputed video evidence submitted in support of or in opposition to a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that summary judgment is appropriate where video

8

evidence contradicts a non-moving party's version of events). Indeed, in construing a video submitted in support of a summary judgment motion, this Court must "view[ ] the facts in light depicted by the videotape." *Id.*

Accordingly, the Court **GRANTS** Plaintiff's Motion (ECF No. 49) to view the video of his Grievance Interview. The Court will treat it as an exhibit filed in support of Plaintiff's opposition (ECF No. 48) to Defendant's Motion for Summary Judgment (ECF No. 38).

### B.   Defendant's Motion for Summary Judgment

#### 1.   Judicial Admission

As an initial matter, the Court considers Defendant Medina's statement in her answer that "there is an administrative grievance process available to Plaintiff and admits that Plaintiff exhausted those administrative remedies." (ECF No. 23 at 4).

Regarding judicial admissions, the Ninth Circuit has explained:

> [U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. . . . Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. . . . Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal citations omitted). Therefore, unless amended, Defendant Medina's admission that Plaintiff has exhausted administrative remedies is binding on the parties and the Court.

In her reply, Defendant Medina barely addresses this argument. She merely includes a footnote to her reply stating "The Court can easily reject Plaintiff's contention that Defendant admitted in her answer to Plaintiff's complaint that he had exhausted administrative remedies. To the extent Defendant's answer took any position on exhaustion, not one response concerned any claim that Defendant failed to protect Plaintiff." (ECF No. 52 at 3 n.3). This argument is unavailing. Defendant's answer was only for Defendant Medina, and the only claim pending against Defendant Medina was for a failure to protect claim. Thus, Defendant Medina's answer stating that Plaintiff had exhausted administrative remedies is a judicial admission as to the

claim against Defendant Medina. Nor has Defendant Medina made any motion to amend her answer or provided any basis to do so. The admission is thus binding on Defendant Medina, and Defendant Medina's motion for summary judgment is subject to denial on that basis.

Nevertheless, as explained below, the Court also recommends finding that Plaintiff exhausted his administrative remedies as to his claim against Defendant Medina.

### 2.  Undisputed facts regarding exhaustion

The Court finds that the following facts are undisputed:[5]

- The alleged incident giving rise to the events in this action occurred on March 19, 2022. (ECF No. 38 at 5, n.2; ECF No. 1 at 3).

- There was a generally available administrative remedy. (ECF No. 52 at 2).

- Plaintiff knew about and used the administrative grievance process by filing a grievance related to the March 19, 2022 incident, which was assigned log #246844 (ECF No. 52 at 2; ECF No. 48 at 4).

- Plaintiff's grievance, log #246844, was timely filed within 30 days of the incident. (ECF No. 48 at 4; ECF No. 38-1 at 2, 3, 6);

- Plaintiff's grievance, log #246844, was identified as an allegation of staff misconduct and referred outside of the institutional grievance process to the CDCR's Office of Internal Affairs-Allegations Inquiry Management Section (OIA-AIMS), which exhausted all administrative remedies available to Plaintiff as to the allegations made in his grievance. (ECF No. 38 at 5–6; ECF No. 38-1 at 2–3; ECF No. 48 at 6; ECF No. 49 at 4).

- Plaintiff was interviewed on April 4, 2022, in connection with his grievance, log #246844, related to March 19, 2022 incident (Grievance Interview). (ECF No. 48 at 5; ECF No. 52 at 3).

Accordingly, the Court finds that there is not a genuine dispute of material fact regarding whether a generally available administrative remedy was available to Plaintiff, and

---

[5] Defendant Medina failed to file a "Statement of Undisputed Facts" as required by Local Rule 260(a) and Plaintiff failed to provide one in response, Local Rule 260(b). However, after reviewing the parties' filings, the Court has determined that neither side disputes these facts.

whether Plaintiff timely filed a grievance that was fully exhausted. The only issue in dispute in this motion is whether Plaintiff's grievance suffices to exhaust Plaintiff's failure to protect claim against Defendant Medina.

### 3. Plaintiff's Grievance

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 219). The Vasquez Declaration provides that the regulations that an inmate must follow in filing a grievance are "set forth in California Code of Regulations, title 15, sections 3480–3487. An inmate may submit a written grievance containing one or more claims, subject to the requirements in section 3482 . . ." (ECF No. 38-1 at 2). In turn, Regs. § 3482(c)(2) requires that a claimant shall:

> describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge;

The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

In his grievance, in relevant part, Plaintiff alleged that:[6]

> [On] March 19 Plaintiff in this matter was subjected to unprovoked and unwarranted attack on his physical person by way of negligence and excessive force by John Doe/Jane Doe officer in observation tower C yard ajointed [sic] caged enclosure by use of dangerous gas canisters dispersed in overzealous manner.

> Plaintiff on above date heard the "shots," two loud booms, then seconds later Plaintiff's caged enclosure was completely overwhelmed and enveloped in toxic cloud of dangerous gas; which broke the

---

[6] This represents the Court's best understanding of Plaintiff's handwriting, ignoring capitalization and spelling where immaterial.

original zone of activity [where] 3 inmates were involved in a fist fight.

Per surveillance cameras stationed on the facility building **it can be clearly observed that Plaintiff was assaulted by gasses while correctional staff ran for cover into program office and other places of cover abandoning Plaintiff in caged enclosure to be subjected to the gas and injury.**

(ECF No. 38-1 at 8) (emphasis added).

In his Grievance Interview, Plaintiff provided this additional information: [7]

[2:20] On that day, I was punching on the punching bag that's outside of the yard, between the two gates . . . When I was punching on the bag, a film came over the yard and took my breath. I immediately stopped what I was doing, tried to hold my breath. I couldn't. Breathing hard because of the bag punching, I tried to get to another side of the gate. Gate was locked. I couldn't get over to my building, so for ten minutes, I had to breathe in the substance. I tried to get help immediately, physically, because of my breathing, and I was turned down. They told me to get back to my building, right now . . .

[3:37] There's quite a few staff members. I don't know them by names but when I tried to get to the building, they were running this way [Plaintiff gestures on camera], to the program office, to get out of the smelling area.

Plaintiff then identified the location of the incident as C yard and stated,

[4:12] I believe he shot the canisters off, because I know that sound. . . . They didn't tell us to get down until after the COs started running to the building, to the program office, that's when they said, "get down."

When asked if he filed an appeal, at 5:00, Plaintiff says that he "filed a 602," and the interviewing staff member confirms "for the record, grievance number 246844." When asked if he has anything else to add to the interview, Plaintiff added:

[5:15] Just that, you know, I wouldn't be here today if I could've got help that day. And I tried. I asked the Sergeant.

---

[7] Numbers in brackets are the time markers, referring to minute and seconds from the start of the recording of the Grievance Interview, as it was provided to the Court by Defendant Medina.

12

Plaintiff's grievance and interview present essentially the same narrative as his complaint in this action: Plaintiff was locked in an enclosure out of which he could not get out, he was being "assaulted by gasses" and struggled to breathe, correctional officers ran for cover past him and abandoned him in the enclosure, he tried to get help and was denied, he specifically "asked the Sergeant" for help but was denied, and the denial of help by "the Sergeant" was the driving force behind his grievance. This sufficiently alerted the prison to the nature of the problem.

Defendant Medina argues that Plaintiff failed to properly grieve his claim against her because she was not named in either Plaintiff's grievance or Grievance Interview. (ECF No. 38 at 9) ("Grievance Log No. 246844 makes *no* mention of Defendant . . ."); ECF No. 52 at 3) ("In that interview, exactly as in his written Grievance Log No. 246844, Plaintiff makes *no* mention of Defendant Medina . . . "). Defendant Medina also posits that her argument "is further supported and evidenced" by the excerpt from OIA/AIMS investigation report, where "under the heading 'Accused Staff,' there is no mention of Defendant." (ECF No. 38 at 9; ECF No. 38-1 at 12).

The Court does not find this argument persuasive. The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones*, 549 U.S. at 219 (citations omitted). Prison regulations require that claimant provides names and titles of staff members involved "to the best of the claimant's knowledge." Regs. § 3482(c)(2). During his Grievance Interview, Plaintiff specified he asked "the Sergeant" for help. (Grievance Interview at 5:15). If that description was not sufficient to identify the particular sergeant involved, the staff who were interviewing Plaintiff had the opportunity to ask follow-up questions. In his grievance, Plaintiff also stated that video surveillance would show staff abandoning him in the cage while running for cover themselves. (ECF No. 38-1 at 8).

Moreover, although Defendant Medina is not listed under "Accused Staff" section of the OIA/AIMS report, identifying her by name was not required in order to exhaust Plaintiff's claim against her. Notably, while Regs. § 3482(c)(2) requires claimant to name staff members

13

involved, to the best of his knowledge, Plaintiff's grievance did not name *any* staff members except as "John Doe/Jane Doe." (ECF No. 38-1 at 8).

The Court thus finds that Plaintiff's grievance contained enough factual specificity to put the prison on notice as to the nature of the wrong for which Plaintiff now seeks redress in this Court under his failure to protect claim, and recommends that Defendant Medina's motion for summary judgment for failure to exhaust administrative remedies be denied.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** that:

1. Plaintiff's Motion to View Video (ECF No. 49) is **GRANTED**;

It is further **RECOMMENDED** that:

1. Defendant Medina's motion for summary judgment (ECF No. 38) be **DENIED**;

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __March 26, 2024__                    /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE

14