UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY COTTON,<br><br>            Plaintiff,<br><br> v.<br><br>MEDINA, *et al.*,<br><br>            Defendants. | Case No. 1:22-cv-00568-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 70)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

      Plaintiff Wesley Cotton is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff alleged that while he was in a locked caged enclosure in the B yard of Corcoran State Prison (CSP), toxic gas from cannisters used to break up a fight in the C yard drifted over and injured him.

      Before the Court is Defendants' Motion for Summary judgment (ECF No. 70), which Plaintiff opposed (ECF No. 79). Defendants filed a Reply. (ECF No. 83).

      For the reasons stated below, the Court will recommend that Defendant's Motion for Summary Judgment be **DENIED**.

      **I.     PLAINTIFF'S COMPLAINT**

      Plaintiff filed the Complaint commencing this action on May 11, 2022. (ECF No. 1). Plaintiff alleged that on March 19, 2022, he was outside in a caged enclosure, which

subsequent filings clarify was in the B-yard. (*See generally* ECF Nos. 1, 63, 67). Plaintiff also alleged that while he was outside, two inmates in C-Yard engaged in a fistfight, and officers in the C-Yard, who Plaintiff initially identified as Doe Defendants and later identified as correctional officers J. Barajas, G. Chacon, A. Guerrero, I. Sanchez, and B. Markin, (ECF No. 33, 39, at 45), responded by firing gas cannisters. (ECF No. 1). The gas entered Plaintiff's caged enclosure, choking him and assaulting his eyesight. (*Id.* 3–5).[1]

Defendant Sgt. Medina did not fire the canisters, but failed to protect Plaintiff from the gas, and issued the order to yard officers to lock Plaintiff inside the caged enclosure, leaving Plaintiff exposed to the gas. (*Id.* at 5). Plaintiff alleges, "as can be seen on the yard surveillance tapes, officers ran into program office for cover leaving Plaintiff in harm." (*Id.*) Further, according to Plaintiff, Defendant Medina ignored Plaintiff's pleas for help and medical aid. (*Id.*)

After reviewing Plaintiff's complaint, the Court found that the case may proceed against Officers J. Barajas, G. Chacon, A. Guerrero, I. Sanchez, and B. Markin ("C-Yard Defendants") on Plaintiff's Eighth Amendment excessive force claim based on them firing gas cannisters in C-Yard, and against Sgt. Medina on Plaintiff's failure to protect claim based on her action in B-Yard while Plaintiff was trapped in locked enclosure. (ECF Nos. 9, 10, 11, 15).

## II.     MOTION FOR SUMMARY JUDGMENT

### A.  Defendant's Motion for Summary Judgment (ECF No. 70)

On April 26, 2024, Defendants filed a motion for summary judgment, arguing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law.[2]

---

[1] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

[2] Defendant's objection to Plaintiff's technical noncompliance with Local Rule 260(b), which requires a party opposing summary judgment to reproduce the movant's statement of undisputed facts, admitting facts that are undisputed and denying ones that are disputed, is overruled. As a *pro se* litigant, Plaintiffs filings are entitled to liberal construction. *See Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 956 n. 12 (9th Cir. 2008). Plaintiff filed opposition with accompanying exhibits and sworn declarations, and the Court may refer to those and his verified complaint in identifying genuine disputes of material fact. *See, e.g.*, *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987); *Sousa v. Wegman*, No. 1:11-CV-01754-LJO, 2015 WL 5027585, at *2 (E.D. Cal. Aug. 14, 2015); *Lyons v. Traquina*, No. CV 06–2339, 2010 WL 3069336, at *4 (E.D. Cal. Aug. 4, 2010).

### 1. Excessive Force Claim

C-Yard Defendants argue that Plaintiff's excessive force claim against them fails because the alleged force used was directed against other inmates, and not Plaintiff. Defendants claim that Defendants Barajas, Chacon, Guerrero, Sanchez, and Markin responded to a fight between rival prison gang affiliates housed on Yard C. They used force, including using pepper spray and gas/powder grenades, to quell the fight. However, Plaintiff was not involved in the fight and was located in an adjacent yard. Thus, Defendants argue, they are entitled to judgment on Plaintiff's excessive force claim because the forced used was not directed at Plaintiff.

Based on the same legal argument, Defendants argue that the officers who used force are entitled to qualified immunity as to Plaintiff's excessive force claim.

### 2. Failure to Protect Claim

With respect to Plaintiff's failure-to-protect claim against Defendant Medina, Defendants argue that the undisputed evidence shows that Defendant Medina was not assigned to Yard 3B the day of the incident and did not give orders to anyone on Yard 3B related to this incident. They argue that summary judgment is thus appropriate on this claim as well, and that she is also entitled to qualified immunity.

## B. Plaintiff's Opposition to Motion for Summary Judgment (ECF No. 79)

Plaintiff opposes (ECF No. 79) Defendants' motion for summary judgment by arguing that there are genuine disputes of material fact that should be decided by a jury. Plaintiff's opposition is made under oath (*id.* at 9, 15) and supported by exhibits that include sworn witness declarations.

### 1. Excessive Force Claim

Plaintiff argues that Defendants used excessive force on March 19, 2022, when they deployed an excessive amount of chemical gas and grenades on 3C Yard, which ultimately spread to 3B Yard where Plaintiff was present. (ECF No. 79 at 5–7). First, Plaintiff claims that the altercation on 3C Yard was orchestrated by prison staff and involved a handcuffed inmate being attacked by four others, contrary to Defendants' characterization of the event as "a gang fight" or "mutual combat." Plaintiff asks the Court to review the video footage from C yard and

accompanying exhibits. (*Id.* at 12).[3] Plaintiff contends that the amount of chemical gas used was excessive and unnecessary given that the situation involved a single handcuffed inmate who posed no threat. Plaintiff references discovery responses of Defendant Sanchez, who Plaintiff claims admitted that the situation was under control before additional chemical agents were deployed by other responding officers. (ECF No. 79 at 10–11). This admission, according to Plaintiff, supports the claim that the use of force was excessive and violated the Eighth Amendment. (*Id.* at 11–12).

Plaintiff further argues that C-Yard Defendants knew of the danger the gas created because the officers were harmed by the excess of gas and needed urgent medical attention. (*Id.* at 13). Plaintiff cites incident reports, attached as exhibits, that describe the amount of gas used by C-Yard Defendants as "a blanket of gas, or thick white cloud of gas or wall of gas." (*Id.*)

Then, Plaintiff argues that the excessive use of chemical agents on 3C Yard had a direct and harmful impact on him in 3B Yard, where the gas spread. He describes the severe physical effects he experienced and the long-term health issues that resulted, emphasizing that the excessive force used on 3C Yard led to his injuries. (ECF No. 79 at 6–7).

### 2. Failure-to-protect claim

Plaintiff contends that Defendant Medina failed to protect him when, after he was exposed to chemical gas from the adjacent C yard, Medina denied Plaintiff's request for medical aid and ordered the yard locked up. (ECF No. 79 at 4–5). Plaintiff argues that Defendant Medina was indeed present on 3B Yard on March 19, 2022, contrary to her statements in the case. (*Id.* at 2–3).

In support of his argument, Plaintiff presents multiple sworn declarations from inmates who were on 3B Yard around the time of the incident, all of whom state under oath that they saw Medina on the yard. Specifically, Christopher G. Valencia, Clifford Lewis, Cesario Medina, Duncan Reynard, Andrew Price, and P. Fielder each provide declarations stating that

---

[3] After an order from the Court (ECF No. 85), Defendants lodged the video from the C-Yard with the Court (ECF Nos. 92, 93).

they saw Sgt. Medina in the B-yard during the relevant time, and some witnessed her refusing medical aid to Plaintiff. (ECF No. 79 at 21–27).

Plaintiff also relies on FLSA sign-in logs, which show that Medina was the only supervising sergeant on duty for 3B Yard on March 19, 2022. (ECF No. 79 at 7). Plaintiff argues that these logs prove she was assigned to 3B Yard and was fulfilling her supervisory duties at the time of the incident, directly contradicting her claim that she was stationed elsewhere. (ECF No. 79 at 5, 7–8). Plaintiff asserts that as the only supervising sergeant on duty for 3B Yard, it was Sgt. Medina's responsibility to oversee the yard, which naturally included being physically present on the yard during the incident. (*Id.*) Plaintiff highlights inconsistencies in Medina's statements regarding her whereabouts and duties on the day of the incident and asserts that these are indicative of Medina's dishonesty and an attempt to avoid liability. (*Id.*)

Plaintiff also recounts his injuries and asserts that he diligently sought medical assistance after exposure to gas but was never properly decontaminated and was not seen by medical until days later. (*Id.* at 6, 9). Plaintiff states that prison officials have a duty to take proper steps to decontaminate inmates after they are exposed to chemical gas, and to ensure their safety. (*Id.* at 5). Plaintiff argues that Medina was made aware by Plaintiff of his exposure to gas and of the pain he felt, as well as his need to see medical after his exposure. Plaintiff cites the accompanying exhibits and the video of his April 2022 interview, in which he refers to the Sergeant who refused him help after the chemical gas incident on Yard C.

### C. Defendant's Reply (ECF No. 83)

In their Reply, filed on August 13, 2023 (ECF No. 83), Defendants argue that Plaintiff's opposition relies on conflated and misstated facts, and fails to properly address the undisputed material facts identified by Defendants. (ECF No. 83 at 1–2).

Defendants maintain that Plaintiff has not provided any competent evidence to support the claim that excessive force was used against him. They reiterate that Plaintiff was not in the yard where force was used and that no force was directed at or applied to Plaintiff.

As to failure-to-protect claim against Medina, Defendants argue that Plaintiff did not provide any admissible evidence showing that Medina was deliberately indifferent to a serious threat to Plaintiff's safety.

Defendants argue that Plaintiff's version of events, as described in his opposition, has some staff officers—not Medina—"ran into the program office after he was 'overwhelmed' with 'gas,' and then *thereafter*, Defendant Medina 'recalled' the yard and placed Plaintiff back into his cell where he 'remained untreated.'" (ECF No. 83 at 6). Defendants note that "alleged deliberate indifference to medical needs cause of action was screened out by this Court and is not a remaining cause of action in this case." (*Id.* at 6 n.3). Defendants highlight that the supporting declarations from other inmates are largely consistent with Plaintiff's version of events, with Medina as arriving on the yard only after the gas had already spread and after the alarm was sounded. (*Id.* at 6–7).

Defendants argue that Plaintiff's version of events and the declarations from other inmates do not support the claim that Medina was indifferent to Plaintiff's safety. Instead, they suggest that Medina's actions, as described by Plaintiff and other inmates, were protective rather than neglectful.

### III. LEGAL STANDARDS

#### A. Summary Judgment

A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca (Albino II)*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn;" the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While *de minimis uses* of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

### C. Failure to Protect

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer, 511 U.S. at 837. "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

## IV. UNDISPUTED FACTS

The following facts are undisputed:[4]

- At all relevant times, Plaintiff was an inmate at California State Prison, Corcoran (CSP-Corcoran). (ECF No. 70–4 at 2; ECF No. 1 at 4).

- At all relevant times, Defendants G. Chacon, J. Barajas, I. Sanchez, A. Guerrero were employed as correctional officers and Defendants B. Markin and Medina as correctional sergeants at CSP-Corcoran. (ECF No. 70–4 at 2, 4; ECF No. 39 at 1; ECF No. 1 at 2).

- On March 19, 2022 at approximately 12:00 p.m., Defendants G. Chacon, J. Barajas, I. Sanchez, A. Guerrero, and B. Markin ("C-Yard Defendants"), were involved in a use-of-force incident in CSP Yard 3C. During this incident, C-Yard Defendants used use-of-force weapons, which included pepper spray and gas from handheld grenades. (ECF No. 70–4 at 3; ECF No. 39 at 1).

- During the use-of-force incident, Plaintiff was not present in Yard 3C; he was in Yard 3B. Plaintiff could not see the C-Yard Defendants and they could not see him. (ECF No. 70–4 at 3; ECF No. 87 at 6, 7).

- C-Yard Defendants did not apply or direct any force, including use-of-force weapons and physical force, against Plaintiff. (ECF No. 70–4 at 4; ECF No. 87 at 8).

## V. ANALYSIS

### A. Excessive Force

Defendants Chacon, Barajas, Sanchez, Guerrero, and Markin argue "the only issue to be decided in this case is what force, if any, was used by Defendants against *Plaintiff* himself, not any other inmates" and that since they "did not use *any* force against Plaintiff," they are entitled

---

[4] Plaintiff failed to respond to Defendants' Statement of Undisputed Facts. (ECF No. 70-4). However, Plaintiff filed his complaint (ECF No. 1) and Opposition to Defendants' Motion for Summary Judgment (ECF No. 79) under oath, and after reviewing the parties' filings, the Court has determined that neither side disputes these facts.

9

to summary judgment. (ECF No. 70 at 12). In support, Defendants cite several cases emphasizing the requirement that force applied be excessive, and dismissing cases where no force was used. *See, e.g.*, *Kingsley v. Hendrickson,* 576 U.S. 389, 390 (2015) ("Finally, the use of an objective standard adequately protects an officer who acts in good faith, *e.g.,* by acknowledging that judging the reasonableness of the force used from the perspective and with the knowledge of the defendant officer is an appropriate part of the analysis."); *Gipe v. Dempsey,* 451 F.2d 1309, 1311 (9th Cir. 1971) ("The undisputed evidence is that the officers used no force in entering the home. They knocked on the door, the door was opened and they peaceably stepped inside. In these circumstances, the entry was lawful."). However, none of these cases address the situation here—where defendants are alleged to have used force and that force was directed at someone other than the Plaintiff.

As to that situation, the Ninth Circuit has held that an excessive force claim may be asserted by someone who was harmed by the allegedly excessive force, even if the force was directed at someone other than the Plaintiff. Specifically, in *Robins v. Meecham*, 60 F.3d 1436, 1441 (9th Cir. 1995), plaintiff Robins was a bystander inmate who was injured when corrections officers fired birdshot at a different inmate. In the context of deciding whether the defendant officers were entitled to qualified immunity, the Ninth Circuit stated as follows:

> In an attempt to invoke the doctrine of specific intent, the officers misstate the standard for determining wantonness, arguing "the standard of wantonness that inmate Robins must establish in his use of force claim . . . is that defendants acted *towards him* maliciously and sadistically for the purpose of causing *him* harm." This subtle but critical misstatement of the appropriate standard would require that the defendants act with specific intent rather than with general intent. The correctly-stated standard, however, is whether the defendants applied force "maliciously and sadistically for the very purpose of causing harm,"—that is *any* harm. *See Farmer*, 511 U.S. at ——, 114 S.Ct. at 1978; *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Wilson*, 501 U.S. at 302, 111 S.Ct. at 2326; *Whitley*, 475 U.S. at 320–21, 106 S.Ct. at 1084–85. Therefore, the officers' argument that they could not have violated Robins's Eighth Amendment rights because the bird shot "did not come under inmate

> Robins' door with the intent to punish, i.e. with maliciousness and sadisticness [sic]" is without merit.

*Robins*, 60 F.3d at 1441. The Ninth Circuit thus concluded that because there existed a material fact concerning whether excessive force was used on the other inmate, the officers were not entitled to qualified immunity.

More recently, in *Perez v. Cox*, the Ninth Circuit held that *Robins* explained that the "conduct at issue [firing birdshot as a skip shot at inmates] clearly implicated the Eighth Amendment: 'Whom the prison officials shot, Robins or Echavarria, is not relevant—what is relevant is that they fired a shotgun blast at an inmate. It is this conduct that the Eighth Amendment is designed to restrain.'" 788 F. App'x 438, 444 (9th Cir. 2019) (quoting *Robins*, 60 F.3d at 1440)) (citations omitted).

Here, it is undisputed that Defendants Chacon, Barajas, Sanchez, Guerrero, and Markin used force on C yard, including by deploying pepper spray and gas/powder grenades, and Plaintiff has alleged with supporting evidence that the force was excessive and harmed Plaintiff.[5] Contrary to Defendants' assertions, the Ninth Circuit has held that an excessive force claim can arise from force directed against someone else that affects the plaintiff as a bystander. Thus, the Court recommends denying Defendants' motion for summary judgment on this claim. Moreover, as their argument for qualified immunity is based on the same misstatement of the law, the Court will recommend that the summary judgement on that basis be denied as well.

### B. Failure to Protect

Defendant Medina argues that she is entitled to summary judgment because she claims that it is undisputed that she was not assigned to work in B Yard and did not give any orders to anyone Yard 3B. (ECF No. 70 at 13–14; 70–9 at 2). Defendants' motion primarily cites to

---

[5] While Defendants briefly state that Plaintiff must also show that the force was applied "maliciously and sadistically . . . rather than in good faith to maintain or restore discipline" (ECF No. 70 at 10) and allege that C-Yard Defendants used force "in good faith effort to maintain or restore discipline," (ECF. No. 70-4 at 2–3), Defendants do not develop this argument or support their argument with evidence. Nor do they address any of the counter evidence Plaintiff submitted in his opposition, including video footage of C-Yard. The Court thus does not address the evidence regarding whether Defendants' use of force was excessive.

Medina's own declaration. (ECF No. 70–13, citing ECF No. 70–4, at 4–5). In that declaration, Medina states the following under penalty of perjury:[6]

> On March 19, 2022, from 6:00 a.m. to 2:00 p.m., I was assigned to CSP-Corcoran Facility 3B, as an Enhanced Outpatient Program (EOP) Sergeant. This means that I was assigned during that time period to a specific area inside Building 3B-01. I was not assigned during that time period to any area outside on Yard 3B. On March 19, 2022, from 2:00 p.m. to 4:00 p.m., I also worked tow hours of voluntary overtime and was assigned—during only that two-hour time period—outside on Yard 3B. Attached as Exhibit A is a true and correct copy of the CSP-Corcoran "History-Post Daily Assignment" (202–0301 through 202–3-51). The highlighted portions of Exhibit A reflect the March 19, 2022 assignments described in this declaration.
>
> On March 19, 2022, at approximately 12:00 p.m., I heard via institutional radio announcement that there was an alarm taking place on another prison yard, specifically Yard 3C, where correctional staff had to utilize chemical agents to Overcome Resistance, Effect Custody and to Gain Compliance to stop several inmates from fighting with one another. However, I was not a part of the staff that responded to the scene, had no personal involvement with that incident, and otherwise I have no information or knowledge regarding the incident because I was assigned to EOP unit inside Building 3B-01 and not the incident involving inmates fighting on Yard 3C. Moreover, I have no recollection, nor was I able to locate any documents to support, that the incident on Yard 3C resulted in any incident on Yard 3B or had any impact on staff's operations on Yard 3B.
>
> On March 19, 2022, from 6:00 a.m. to 2:00 p.m., which includes the time period of 12:00 p.m., I did not go outside into Yard 3B, I did not give any orders outside on Yard 3B, I do not recall having any contact and/or interaction with inmate Wesley Cotton (P07770), nor would I ever refuse any requested medical aid or general assistance from inmate Cotton. At that time, and specifically at 12:00 p.m., I was assigned as an EOP Sergeant assigned to 3B01 and was unaware of any incident occurring or reported outside on Yard 3B involving

---

[6] Internal paragraph headings omitted.

> inmate Cotton, or any other inmate, that presented a serious threat to his or any other inmates' safety.

(ECF No. 70–9, at 2). Medina's declaration attaches a document entitled "History-Post Daily Assignment," which indicates that Medina waws given the assignment "064COPR/2W 3B Supervisors/220366 RS204 3B Program SGT EOP) 010123 #-2 (BWC)" for the date and time of the incident.

However, Plaintiff has submitted evidence disputing Defendant Medina's description of her role that day. Plaintiff has submitted sworn declarations from six other inmates who state that they were present in 3B Yard around the time of the incident and saw Medina there. (ECF No. 79 at 21–27). For example, inmate Christopher Valencia states in his declaration:

> I Christopher G. Valencia was on 3B Yard on 3/19/22 when at 12:00pm a cloud of gas invaded the yard . . . . I declare I personally saw Sgt. Medina walk onto the yard from the patio. As I approached her I also saw the Plaintiff Wesley Cotton approach her. I over heard Mr. Cotton ask for medical treatment. I heard Sgt. Medina say no loud and very rude she said lock it up. I also heard her say I don't care.

(ECF No. 79 at 23). In another declaration, inmate Duncan Reynard states "I witnessed Sargent Medina come out of the 3B program and shout yard recall, and she also yellowed programe is down due to gasing on C Yard." (ECF No. 79 at 27). Other declarations similarly state that they witnessed Medina on the yard at the relevant time. Additionally, Plaintiff's own complaint, signed under penalty of perjury, states that Medina "issued the orders to yard c/o's officers to "lock Plaintiff inside a cage enclosure . . . ." (ECF No. 1 at 5). Plaintiff argues that the logs prove Medina was assigned to 3B Yard and was fulfilling her supervisory duties at the time of the incident. (ECF No. 79 at 5, 7–8). Plaintiff asserts that as the only supervising sergeant on duty for 3B Yard, it was Sgt. Medina's responsibility to oversee the yard, which naturally included being physically present on the yard during the incident. (*Id.*)

Defendant Medina argues in her reply (ECF No. 83 at 7–8) that these declarations establish only that Medina arrived on the yard only after the gas had already spread and after the alarm was sounded. (*Id.* at 6–7). Further, Medina argues, her actions, as described by Plaintiff and other inmates, were protective rather than neglectful. For example, multiple

13

declarations state that Medina called for a yard recall and instructed inmates to "lock it up," actions which Defendants argue were intended to protect the inmates from further exposure to the gas. (ECF No. 83 at 7–8).

The Court finds that the inmate declarations, coupled with Plaintiff's complaint made under oath, establish a genuine dispute of material fact as to Medina's presence and her actions in the yard during the relevant time. While Medina categorically denies being present or giving any orders (ECF No. 70–9) ("On March 19, 2022; from 6:00 a.m. to 2:00 p.m., which includes the time period of 12:00 pm, I did not go outside into Yard 3B, I did not give any orders outside on Yard 3B . . ."), Plaintiff has established a genuine dispute as to that material fact.

Therefore, the Court will recommend that the summary judgment on this issue should also be denied.

Moreover, as Defendants' argument that Medina is entitled to qualified is based on the same assertions of fact (ECF No. 70 at 17) ("She had no interaction with Plaintiff on March 19, 2022, at the time of the incident or otherwise . . . ."), which the Court finds are disputed, the Court recommends denying summary judgment on that basis as well.

## VI. CONCLUSION AND ORDER

Based on the foregoing, **IT IS RECOMMENDED**:

1. Defendants' Motion to Summary Judgment (ECF No. 70) is **DENIED**.
2. This case be ordered to proceed on Plaintiff's claim for excessive force in violation of the Eighth Amendment against Defendants Chacon, Barajas, Sanchez, Guerrero, and Markin; and Plaintiff's claim for failure to protect in violation of the Eighth Amendment against Defendant Medina.[7]

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written

---

[7] Although Plaintiff's opposition argues that Defendant Medina was deliberately indifferent to his serious medical needs, there is no such claim was asserted in Plaintiff's complaint or allowed to proceed in the Court's screening order.

objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within thirty days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 11, 2024**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE