**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WESLEY COTTON,** | 1:22-cv-00568-JLT-EPG (PC) |
| Plaintiff, | ORDER ON MOTIONS IN LIMINE AND OTHER MISCELLANEOUS MOTIONS |
| v. | (Docs. 168, 169, 170, 171, 194, 196, 197, 198, 201, 205) |
| **MEDINA, et al.,** | |
| Defendants. | |

The parties submitted motions in limine and other miscellaneous motions regarding evidence expected to be presented at trial on January 27, 2026. The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618.

**I. FACTUAL BACKGROUND**

Wesley Cotton is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (*See generally* Doc. 1.) Mr. Cotton alleges that on March 19, 2022, an incident occurred on Yard 3C at California State Prison, Corcoran ("CSP-Corcoran"), in which officers deployed multiple chemical agents, including oleoresin capsicum ("OC"), chloroacetophenone ("CN"), chlorobenzalmalononitrile ("CS") grenades (collectively, "chemical agents") to stop a fight between third party prisoners. (*See* Doc. 1 at 3-5.) At the time the chemical agents were deployed, Mr. Cotton was located on an adjacent yard, 3B. (*Id.*) Mr. Cotton alleges that Defendant Medina failed to protect him from exposure to the chemical agents which

1

traveled from Yard 3C into Yard 3B, where he was locked in a caged enclosure. The alleged exposure caused Mr. Cotton to choke and injurrd his eyes, lungs, and body. (*Id.*)

## II.       LEGAL STANDARDS GOVERNING MOTIONS IN LIMINE

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). The Ninth Circuit explained motions in limine allow parties to resolve evidentiary disputes ahead of trial "before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009).

Motions in limine seeking the exclusion of broad categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "a better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. *Sperberg*, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

## III.    DISCUSSION

### A.  Mr. Cotton's Motions

#### 1.    Motion in Limine (Doc. 169)

Mr. Cotton moves to introduce "limited excerpts from peer-reviewed, authoritative literature concerning riot control agents" for demonstrative use to "educate the jury, without offering the articles themselves for the truth of every matter asserted." (Doc. 169 at 1.) Specifically, Mr. Cotton seeks to introduce scientific article(s) authored by Dr. Sven-Eric Jordt, Ph.D. and "medical society statements."[1] (Doc. 169 at 1.) Defendant filed a similar Motion in Limine (Doc. 205), arguing that such materials constitute inadmissible hearsay and do not fall under the Rule 803(18) exception to hearsay given that Mr. Cotton has not offered the testimony of an expert witness who could authenticate such documents (*Id*. at 7-8.)

Federal Rule of Evidence 801 generally prevents the admission of hearsay statements, which are statements made outside of a court trial or hearing and offered for their truth, unless they fall under a hearsay exception under Rules 803, 804, or 807. "A statement contained in a treatise, periodical, or pamphlet" is admissible under Rule 803(18) if "the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct

---

[1] It is unclear to the Court to what "medical society statements" refers.

examination" and "the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18).

In his Pretrial Statement, Mr. Cotton submitted documents related to the curriculum vitae of Dr. Sven-Eric Jordt, Ph.D., which included a list of publications Dr. Jordt has authored or co-authored. (Doc. 172-2 at 206-215). Without having the actual article(s) to review, it is difficult for the Court to fully determine the admissibility of Dr. Jordt's articles. Nonetheless, the information provided suggests that Mr. Cotton intends to introduce an article written by a third party and which most likely contains opinions regarding riot control agents. None of Plaintiff's witnesses -- the list comprising himself, other inmates, prison medical personnel, correctional officers, and the Defendant -- will be able to lay a foundation or authenticate the article because they lack personal knowledge of its contents. Fed. R. Evid. 602, 901(a). Even if Dr. Jordt's articles are self-authenticating—for instance, as an official publication (Rule 902(5)) or as a newspaper or periodical (Rule 902(6))—the third-party authorship presents a significant hearsay problem. The out-of-court statements containing opinions about the amount or type of force reasonably necessary are likely relevant only for their truth and not subject to any hearsay exception.

Mr. Cotton also submitted as part of his Pretrial statement a scientific article published on the National Institutes of Health National Library of Medicine website discussing the health impacts of chemical irritants used for crowd control. (Doc. 172-2 at 125-155.) Although this article is published on the National Library of Medicine website, it is unclear whether this publication constitutes a "government publication" --- and therefore subject to a hearsay except under Fed.R.Evid. 803(8) – or whether this publication was simply collected as part of a government-sponsored resource depository. Even still, Mr. Cotton encounters a similar hearsay issue because he does not have an expert to provide the necessary authenticating testimony or the necessary expertise to explain to the jury how these materials pertain to the legal issues. See Fed. R. Evid. 803(18). Accordingly, Mr. Cotton's Motion in Limine is **DENIED**[2].

///

---

[2] This does not preclude Mr. Cotton from using these materials during cross-examination of the defense expert, assuming the expert can lay an adequate foundation for them.

4

#### 2.   Testimony of Sgt. M. Contreras

Mr. Cotton has multiple motions pending before the Court relating to the testimony of Defendant's witness Sgt. M. Contreras, an armory sergeant at CSP-Corcoran. (Docs. 152, 159, 166, 170, 196, 197).[3]

#### a.   Objection to Defendant's Rule 26 Disclosures (Docs. 152, 159, 166, 197)[4]

Mr. Cotton moves the Court to exclude the testimony of Sgt. M. Contreras under FRCP 26(a)(2) and 37(c)(1), alleging that Defendant is trying to "sneak in" Sgt. M. Contreras as a new witness outside of the discovery timeline and without proper notice. (Doc. 197 at 1.) Mr. Cotton alleges M. Contreras "never existed in any part of discovery or the summary judgement phase," therefore preventing Mr. Cotton from deposing M. Contreras," who Mr. Cotton claims has no "accredited scientific education" or Rule 26(a)(2)(b) report. (Doc. 197 at 2.)[5] Defendant's objection to Mr. Cotton's allegations, countering that they timely disclosed Contreras as an expert witness and submitted his expert report. (Doc. 213 at 6.)

Under Federal Rules of Civil Procedure 26(a)(2)(D)(i), at least 90 days before the date set for trial, or otherwise ordered by the Court, the parties must disclose their expert witness. If a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence at trial unless the failure was substantially justified or is harmless. Fed.R.Civ.P. 37(c).

Mr. Cotton claims that Defendant failed to disclose Contreras in the initial or final witness lists (May 11, 2023), the non-expert deadline (January 19, 2024), or the expert deadline (February

---

[3] He also requests an oral hearing to address the instant motions. (Doc. 198.) The Court does not find that a hearing is necessary, and the request for a hearing on the motions (Doc. 198) is **DENIED**.

[4] Mr. Cotton filed three duplicative motions related to the issue of Rule 26 Disclosure of M. Contreras on September 3, 2025 (Doc. 152), September 30, 2025 (Doc. 166), and on December 3, 2025 (Doc. 197.) On September 9, 2025, Mr. Cotton filed a supplement to his initial motion (Doc. 159), which the Court will also consider when ruling on Docs. 152, 166, and 197. For the sake of clarity, the Court will be referencing Doc. 197 for citation purposes, but its ruling will bear on all relevant pending motions.

[5] Mr. Cotton also attacks Contreras' credibility as an expert witness. (Doc. 197 at 3.) As this issue is addressed in detail later in this order in response to Mr. Cotton's "Motion to Strike Contreras' Statements" (Doc. 170), the Court declines to address his arguments here.

23, 2024) and that Defendant failed to show substantial justification or lack of harmlessness for the late disclosure or harmlessness. (Doc. 197 at 3.)

The Court notes multiple deficiencies in Mr. Cotton's argument, mainly that according to the "Second Scheduling Order" in this case (Doc. 132), the deadline for all parties to serve their expert disclosures was August 15, 2025.[6] (Doc. 132 at 2.) Defendant provided evidence that she did in fact timely disclose and serve on Mr. Cotton the Rule 26 expert report for Sgt. M. Contreras on August 15, 2025, more than 90 days before the January 27, 2026 scheduled trial date. (Doc. 213-1 (Dec. of Daniel Krasiev-Dvornikov; Doc. 213-2 (Rule 26 Report for Contreras dated August 14, 2025); Doc. 213-2 (Declaration of Service by U.S. Mail). Accordingly, Mr. Cottons' request to strike Sgt. M. Contreras' testimony for untimeliness under FRCP 26 is **DENIED**.

> b.   Motion to Strike (Docs. 170, 196)[7]

Mr. Cotton asks the Court to strike the opinions and testimony of Defendant's expert, M. Contreras, on the ground that it is inadmissible under Federal Rules of Evidence 602, 802, 702, 701(c), 403 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S.

---

[6] The Court's original "Second Scheduling Order and Order Directing Clerk to Send Plaintiff a Copy of Local Rule 281(B)" (Doc. 131), mistakenly listed this deadline as Saturday, August 16, 2025. On account of such, the Court issued an amended order, which sets the expert disclosure deadline as Friday, August 15, 2025.

[7] On September 3, 2025, Mr. Cotton filed this exact motion. (Doc. 153.) On September 10, 2025, the assigned magistrate judge in this case issued the following minute order:

> The Court has received Plaintiff's Motion to Strike Contreras Statements (ECF No. 153 ), citing various rules of evidence and asking the Court to strike testimony. There is no testimony before the Court. To the extent Plaintiff seeks to preclude a witness named Contreras from testifying, he should identify that issue in his pretrial statement and follow the District Judge's instructions regarding the filing of pretrial motions, including motions in limine. To the extent Plaintiff wishes to object to testimony at trial, he may present his objections at trial. The Court will take no further action on Plaintiff's Motion at this time, and it (ECF No. 153) is therefore DENIED without prejudice.

(Doc. 160.) Mr. Cotton proceeded to refile this exact motion on September 30, 2025 (Doc. 170) and then again on December 3, 2025 (Doc. 196.) For the sake of clarity, the Court referencing Doc. 170 for citation purposes, but its ruling will bear on all relevant pending motions.

6

137, 119 S.Ct. 1167, 143 L.Ed.2d 238, (1999). (Doc. 170, 196).[8] Defendant counters that Contreras' opinions satisfy the criteria of Rule 702 and *Daubert* and his testimony is not excludable under the numerous evidentiary rules cited by Mr. Cotton. (Doc. 213 at 1.)

### i. *Daubert Admissibility*

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise, if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Ordinarily, to determine whether the expert testimony will validly assist the trier of fact, a court may consider: (1) whether the expert's theory or technique can be tested, (2) whether the theory or technique was subject to peer review through publication, (3) the potential rate of error, (4) standards controlling the technique's operation, and (5) general acceptance within a relevant community. *Daubert v. Merrell Dow Pharm*, 509 U.S. 579, 593-95 (1993).

"Rule 702 grants the district judge the discretionary authority ... to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). In evaluating reliability, an expert may "draw a conclusion from a set of observations based on extensive and specialized experience," and may rely on, for instance, "visual examination and process of elimination" to formulate an opinion. *See id*. at 156; see also *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (an expert may rely on personal knowledge or experience to formulate opinion); *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1058 (9th Cir. 2003) (context of differential diagnosis of medical patient: "Dr.

---

[8] Mr. Cotton also cites Fed.R.Civ.P. 26 as grounds for striking M. Contreras' testimony because Defendant did not submit a timely expert report. This issue was addressed in Mr. Cotton's Objections to Defendant's Rule 26 Disclosures Motions. (Docs. 152, 159, 166, 197). Because the Court finds that such allegations were unfounded, Rule 26 cannot serve as a basis to strike M. Contreras' testimony.

Elston's reasons for reaching the conclusion, by process of elimination, that contact toxicity was the *specific* cause of the oyster deaths were similarly reliable.") (emphasis in original); *Mensonides Dairy, LLC v. Agri-King Nutrition, Inc.*, No. 1:16-cv-03067-SAB, 2017 WL 6896796, at *6 (E.D. Wash. Oct. 5, 2017) (retained "forensic agronomist with experience working on a number of defective-performing product cases," who had worked for the plaintiff's dairy for almost twenty years was deemed reliable "based on his experience and training ... as well as his review of the relevant records."); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").

Other relevant reliability considerations include, *inter alia*, "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 advisory committee notes to 2000 amendment, *e.g., Clausen*, 339 F.3d at 1058 ("A district court is justified in excluding evidence if an expert utterly fails to offer an explanation for why [a] proffered alternative cause was ruled out.") (cleaned up) (internal quotation marks and citation omitted). However, "an expert need not rule out every potential cause in order to satisfy *Daubert*, as long as the expert's testimony addresses obvious alternative causes and provides a reasonable explanation for dismissing specific alternate factors identified by the defendant." *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) (cleaned up) (internal quotation marks and citation omitted).

Defendant established Contreras' credentials as a veteran law enforcement officer with nearly twenty-five years of experience and has worked as an armory sergeant at CSP-Corcoran since 2017 where he became familiar with the facilities and layout of Yards 3B and 3C. (Doc. 213 at 4.) Over the course of his career, Contreras "developed extensive and specialized knowledge regarding the maintenance, handling, and use of chemical agents and use-of-force munitions including OC, CN, and CS gas grenades." (*Id.*) He also conducts weekly trainings for staff on "the handling and deployment of chemical agents, which specifically include training on the effective range of OC, CN, and CS grenades of the type deployed in the underlying incident" and has responded to dozens of violent incidents requiring officer intervention and deployment of chemical agents. (*Id.*)

Contreras relied on "his experience and training on the nature, use, and effective range of the specific chemical munitions deployed in the underlying incident" in formulating his opinion that an individual located on CSP-Corcoran's 3B Yard – located approximately 750 feet south of where chemical agents were deployed on CSP-Corcoran's 3C Yard during the March 19, 2022 incident and separated by multiple buildings – would not have been affected by the chemical agents. (*Id.*) Furthermore, in reaching his opinion, Contreras reviewed reports from the March 19, 2022 incident, surveillance-camera and body-worn camera footage of the incident and conducted a physical inspection and measured the incident location. (Doc. 213 at 5.)

In a motion related to Contreras' testimony, Mr. Cotton claims that "as only an armory officer/sergeant, Contreras presents no accredited training in CN chemical composition, gas dispersion or meteorology – yet seeks to offer scientific-type opinions." (Doc. 197 at 3.) However, Mr. Cotton does not elaborate on Contreras' alleged lack of qualifications, lack of personal knowledge, or his accusation that allowing M. Contreras' to testify would constitute "unfair prejudice/confusion/waste given CCPOA allegiance and armory-only role." (Doc. 170 at 1.)

Ultimately, the Court is satisfied that Contreras' "specialized knowledge and experience can serve as the requisite 'facts or data' on which [he may] render an opinion." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017,1024 (9th Cir. 2022). Contreras has provided the "how and why" underlying his conclusions and opinion in this case, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997), which appears to be, at least in part, his knowledge and expertise with the CSP-Corcoran premises and the nature, use, and effective range of the specific chemical munitions at issue in this caser to arrive at his conclusion. The Court also finds that there is no evidence of Contreras showing improper "allegiance" to either Defendant or CSP-Corcoran, such that the finds that Contreras is sufficiently qualified, and it will not exclude him on this basis.

*ii. Exclusion under Rules of Evidence 602, 802, 701(c), and 403*

Mr. Cotton complains that Contreras' testimony and expert report fail to satisfy the criteria of the various Federal Rules of Evidence.

9

As a threshold matter, because Defendant intends to have Contreras testify as an expert witness, Mr. Cotton's invocation of Federal Rules of Evidence 602 and 701(c) as grounds for exclusion are unavailing. *See* Fed. R. Evid. 602 (requirement that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter does not apply to a witness's expert testimony under Federal Rule of Evidence 703); *see* Fed. R. Evid. 701(c) (if witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is not based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702).

Mr. Cotton's invocation of Rule 802 and 403 similarly unpersuasive. Out-of-court statements are inadmissible hearsay when they are offered to prove the truth of the matter asserted. Fed. R. Evid. 801, 802. Unless hearsay is subject to a hearsay exception, it is not admissible. Fed.R.Evid. 802, 803.  Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Even if relevant, the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Mr. Cotton does not explain how Contreras' testimony or expert report[9] constitute inadmissible hearsay, as Contreras' opinion appears to be based on non-hearsay evidence, including his professional training, operational experience, physical inspect and measurement of the incident locations, and review of surveillance and body-warn-camera footage of the incident. Furthermore, Defendant explains how Contreras' testimony is highly probative under Rule 403 as to Mr. Cotton's Eight Amendment failure to protect claim because it directly addresses the likelihood of a significant risk that Mr. Cotton was exposed to chemical agents during the March 19, 2022 incident. Accordingly, Mr. Cotton's Motion to Strike M. Contreras is **DENIED**.

---

[9] In general, expert reports are not admitted into evidence. Rather, the expert provides the report so that the opponent will understand the opinions and reasons for them.

3.   Objections to Pretrial Order (Doc. 194, 202)

Mr. Cotton alleges that the Court failed to record and account for in its November 18, 2024 Pretrial Order (Doc. 191), certain exhibits, evidence, and witnesses that he submitted as part of his pretrial filings. (Doc. 194 at 1.)

a.   Prisoner Witness Gino Brewer

Mr. Cotton first alleges that prisoner witness Gino Brewer was not listed as a witness in the Court's November 18th, 2025 Pretrial order and seeks to modify the Pretrial order to reflect the additional witness. (Doc. 194 at 1.) He notes that the Court's November 18th order conflicts with a November 20th, 2025 order from the assigned magistrate judge in this case. (*Id.*) In that order, the assigned magistrate judge granted Mr. Cotton's motion for attendance of incarcerated witnesses at trial, including Gino Brewer. (Doc. 192).

According to the May 19, 2025 "Second Scheduling Order" in this case (Doc. 132), "[i]f Plaintiff wants to call witnesses to testify, Plaintiff must follow certain procedures to ensure that all the witnesses will be at the trial and available to testify," including procedures related to incarcerated witnesses. (Doc. 132 at 2.) The order further stated "[i]n order to ensure timely submission of the money orders, Plaintiff must notify the Court of the names and locations of his or her witnesses, in compliance with the instructions above, no later than September 15, 2025." (Doc. 132 at 4.)

Mr. Cotton has filed multiple motions regarding the appearance of incarcerated witnesses at trial: June 25, 2025 (Doc. 140); July 15, 2025 (Doc. 144) and again on September 30, 2025 (Doc. 167.) In his June 25, 2025 motion for attendance of incarcerated witnesses at trial, Mr. Cotton lists Gino Brewer as one of the six prison witnesses he sought to have testify at trial. (Doc. 140 at 2.) He then filed a supplement to this motion on July 15, 2025, in which Gino Brewer's name is crossed out on the list of witnesses. (Doc. 144 at 1.) He also included various declarations from other prisoner witnesses, but not Gino Brewer. (*Id.*) Then on September 30, 2025, Mr. Cotton filed another a duplicative motion for attendance of incarcerated witnesses which included again included Gino Brewer. (Doc. 167.) In his Pretrial Statement, Mr. Cotton submitted a "Witness List Part B," where he lists thirteen witnesses he intends to call at trial, but Mr. Brewer is not on

11

that list. (Doc. 172 at 13.) However, later in his pretrial filings, he attaches a declaration from Gino Brewer in which Gino Brewer attests to witnessing the events of March 19, 2022. (Doc. 172 at 22.) In his objection to the Pretrial Order, Mr. Cotton claims Brewer's testimony is "critical and vital" since he will be "providing as an eyewitness to Defendant Medina denying Plaintiff medical aid." (Doc. 194 at 1.)

Following the magistrate judge's order granting Mr. Cotton's granted Mr. Cotton's motion for attendance of incarcerated witnesses at trial (which included Gino Brewer) (Doc. 192), an order and writ of habeas corpus ad testificandum to transport Gino Brower was signed on January 6, 2026. (Doc. 206.) Thus, the objection is **SUSTAINED,** and the pretrial order is amended to add Gino Brewer to the witness list.

b.    Defendant's Deposition Transcripts

Mr. Cotton objects that the Court's Pretrial Order excluded the July 29, 2025 deposition transcripts of Defendant. (Doc. 194 at 2.) Mr. Cotton objects "due to the fact that no reasons or stated authority was provided for the exclusion" of the deposition transcripts and seeks to have them introduced into evidence for impeachment purposes.[10] (*Id.*) The Court construes Mr. Cotton's request as seeking to introduce Defendant Medina's deposition testimony for impeachment and substantive purposes pursuant to Federal Rule of Evidence 613(b), 801(d)(1)(A).

A prior inconsistent statement may be admitted for impeachment purposes so long as (1) the witness is afforded an opportunity to admit or deny the statement and (2) an adverse party is able to examine the witness about the statement. Fed. R. Evid. 613(b). As a threshold matter, a court must first determine whether the prior statement is truly inconsistent with the witness' live testimony. *United States v. Hale*, 422 U.S. 171, 176 (1975). Courts typically take a less-restrictive approach to the degree of inconsistency required for admission of a prior statement under Rule 613(b). 1 Robert P. Mosteller et al., *McCormick on Evidence* § 34 (9th ed.), Westlaw (database updated February 2025). Under this view, a court asks whether there is "any material variance

_____

[10] Mr. Cotton submitted the relevant portions of the deposition transcript in his Pretrial Statement. (Doc. 172-2 at 39-123).

between the testimony and the previous statement." *Id*. When determining whether to permit the use of a prior statement for impeachment, the trial court has a "high degree of flexibility" in evaluating the degree of inconsistency required between the trial testimony and prior statement. *United States v. Higa*, 55 F.3d 448, 453 (9th Cir. 1995) (quoting *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977)).

A witness' prior statement may be admitted as substantive evidence if (1) the witness "testifies and is subject to cross-examination about a prior statement" and (2) the statement was given under penalty of perjury at a prior proceeding or deposition and is inconsistent with the witness's testimony at trial. Fed. R. Evid. 801(d)(1)(A). Like the impeachment test for evaluating the inconsistency of a prior statement with trial testimony, a court employs a flexible approach that asks whether the prior statement is "helpful in resolving a material, consequential fact in issue." *Morgan*, 555 F.2d at 242 (quoting 4 Matthew Bender, Weinstein's Evidence § 801.76–801.76.1 (1976)).

Because Mr. Cotton will be calling Defendant Medina as a witness, and as her prior out of court statements were taken under oath at a deposition, Mr. Cotton may use Medina's deposition testimony, taken on July 29, 2025, for impeachment purposes at trial and questioning regarding the failure to preserve the video and BWC evidence, including CDCR's document retention policy to the jury. The party who has retained the original deposition transcript **SHALL** lodge it with the Deputy Courtroom Clerk **no later than 4 p.m. on January 22, 2026.**

c.   Sacramento Bee Newspaper Article

Lastly, Mr. Cotton next alleges that the Court's Pretrial Order excluded a Sacramento Bee newspaper article reporting on an incident where CN gas fumes traveled over 1.7 miles following a training exercise. (Doc. 194 at 1.) The Court construes Mr. Cotton's request as seeking to introduce the article into evidence for the truth of the matter that CN gas can travel over 1.7 miles.

Federal Rule of Evidence 801 generally prevents the admission of hearsay statements, which are statements made outside of a court trial or hearing and offered for their truth, unless they fall under a hearsay exception under Rules 803, 804, or 807. Statements reported in

13

magazine articles and newspapers are hearsay if offered to prove the truth of the matter asserted. *In re Oracle Corp. Sec. Litig*, No. C01-00988SI, 2009 WL 1709050, at \*8 (N.D. Cal. June 19, 2009) aff'd sub nom. In re Oracle Corp. Sec. Litig.,627 F.3d 376 (9th Cir. 2010); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1090 (CD. Cal. 2005) ("Even when the actual statements quoted in a newspaper article constitute nonhearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem."); *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1070 (D. Nev. 1998) (holding that discussion in newspaper articles constituted hearsay and would be disregarded by the court). Similarly, statements taken from the internet are hearsay when offered to prove the truth of the matter asserted. *Stewart*, 574 F. Supp. at 1090; *Woods v. Slater Transfer & Storase, Inc*., No. 2:08-CV-00948-GWF, 2010 WL 3433052, at \*4 (D. Nev. Aug. 27, 2010). Because Mr. Cotton is offering the Sacramento Bee article for the truth of the matters asserted and for the reasons set forth above at Headnote II.A.1, the Court **DENIES** Mr. Cottons' motion to introduce Exhibit 180 into evidence.

    4.    Requests for Judicial Notice

Mr. Cotton requests for the Court to take judicial notice of certain government publications and of certain instances of alleged misconduct by defense counsel.[11] Defendant Medina does not oppose Mr. Cotton's requests.

    a.    Legal Standard

A judicially noticed fact is a "fact not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is generally known within the trial court's territorial jurisdiction or if it can be accurately and readily determined from sources whose authority cannot reasonably be questioned. *See (Id.)*; *see also United States v. Bernal-Obeso, 989 F.2d 331, 333* (9th Cir. 1993). The court must take judicial notice "if a party requests it and the court is supplied with the necessary information." *Id*. 201(c)(2).

---

[11] Mr. Cotton also filed a motion requesting the Court to take judicial notice of the existence of its own docket, including several dates. (Doc. 171.) The Court has previously issued a Minute Order related to a similar request and found no basis to judicially notice its own docket. (Doc. 162.) To the extent Plaintiff wishes to cite to the docket in support of some form or relief, he may do so without the Court taking judicial notice. For that reason, Plaintiff's Request for Judicial Notice (Doc. 171) is **DENIED**.

b.   Government Publications (Doc. 168)

Mr. Cotton requests the Court to take judicial notice of various government publications regarding the deployment of chemical agents for purposes of riot-control. (Doc. 168 at 1.) Mr. Cotton asserts that these publications relate to the general characteristics of "RCAs," dispersion, exposure, hazard distances and downwind planning, and seeks to introduce them at trial for purposes of rebutting Defendant's arguments regarding the maximum exposure radius of relevant chemical agents at issue in this case. (*Id*. at 2.) Mr. Cottons suggests that judicial notice of the six government publications is appropriate because they are "self-authenticating public records…under FRE 201, 803(8), and 902(5). (*Id*. at 1.) Defendant did not object.

Mr. Cotton requests judicial notice for the following government publications:[12]

1.   Centers for Disease Control and Prevention ("CDC") Website, Chemical Fact Sheet, Riot Control Agents (September 2024)

2.   "NIOSH/CDC Emergency Response Card: CN (Chloroacetophenone)"

3.   "CDC Chemical Threats & Toxins Laboratory (CTTL) – Riot Control Agents"

4.   "AEGL's for CS (National Academy of Sciences)"

5.   U.S. Army Field Manual FM 3-19.15: Civil Disturbance Operations (April 2005)

Because government publications are matters of public record and can be easily verified, they are proper subjects of judicial notice. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website").

The first government publication Mr. Cotton seeks judicial notice of is a Chemical Fact Sheet published by the U.S. Centers for Disease Control and Prevention (CDC) which provides public-focused background information about riot control agents – chemical compounds

---

[12] Mr. Cotton submitted these publications to the Court in his pretrial statement. The publications' corresponding exhibit numbers cited by Mr. Cotton in his motion for judicial notice do not correspond with the exhibits in his pretrial statement. Therefore, for the sake of clarity, the Court will refer to the publications by their titles and not their corresponding exhibit number.

commonly referred to as tear gas. [Doc. 172-2 at 200-204.] Mr. Cotton also seeks judicial notice of excerpts from the U.S. Army Field Manual FM 3-19.15: Civil Disturbance Operations, which is an official doctrinal publication of the U.S. military. The excerpts Mr. Cotton seeks to introduce relate to the use of chemical irritants in confinement facilities. (Doc. 172-2 at 220-229.) Both the CDC Chemical Fact Sheet and the excerpts from the U.S. Army Field manual are proper subjects of judicial notice as they are matters of public record and can be easily verified. *See Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information concerning the transmission of Lyme Disease from the CDC website).

Nevertheless, it appears that Mr. Cotton seeks to have the Court take judicial notice not only of the fact that the documents *exist* –which is proper—but also to the *facts* contained in them—which is not proper.[13] Furthermore, the remaining government publications Mr. Cotton requests the Court to take judicial notice of ("CDC Chemical Threats & Toxins Laboratory (CTTL) – Riot Control Agents"; "AEGL's for CS (National Academy of Sciences")) were not submitted to the Court as part of Mr. Cotton's Pretrial Statement or attached to his motion for judicial notice.[14] Therefore, the Court cannot verify whether they are proper subjects of judicial notice or independently discern how any of publications are relevant. Accordingly, Mr. Cotton's request for judicial notice is **DENIED** without prejudice**.**

          c.   Improper Contact with Plaintiff's Witnesses (Doc. 201)

Mr. Cotton requests judicial notice of alleged improper "off the record" interviews of his prisoner witnesses by defense counsel. (Doc. 201 at 1) Mr. Cotton alleges that over the course of two days between December 16, 2025 and December 18, 2025, counsel for the Defendant Attorney General David E. Kuchinsky engaged in intimidation, witness tampering, and

---

[13] Mr. Cotton provided the following in his request for judicial notice: "Plaintiff does not ask the Court to resolve disputed adjudicative facts; rather Plaintiff asks the Court to recognize what these official publications say about dispersion and hazard distances." (Doc. 168 at 2.)

[14] In his Motion in Limine (Doc. 169), Mr. Cotton seeks to admit "summary charts derived from admissible government publications," such as "AEGLs, CDC/NIOSH, Army FM" pursuant to Rule 1006. Given that the Court found such publications not to be proper subjects for judicial notice, this request is **DENIED**. However, this order does not preclude Mr. Cotton from seeking to introduce relevant government publications at trial for purposes of rebuttal and not for the truth of the matter asserted pursuant to the public records exception to hearsay. Fed. R. Evid. 401; 803(8).

harassment of Mr. Cotton's prisoner witnesses Gino Brewer, Duncan Reynard, and Paul Fielder by questioning them about trial preparation and their knowledge of events. (Doc. 201 at 1-2.) [15]

As previously mentioned, for a fact to be judicially noticeable, it must not be subject to reasonable dispute, meaning it can be accurately and readily determined from sources whose authority cannot reasonably be questioned. Fed. R. Evid. 201(b). Though the Court takes accusations of improper contact with opposing trial witnesses very seriously, there remain serious doubts as to whether Mr. Cotton's allegations are actionable. Mr. Cotton did not submit any evidence to the Court that could independently verify his allegations, such as call logs, phone call recordings, or signed declarations of the other prisoners who were allegedly harassed by defense counsel. Moreover, there is no prohibition on attorneys talking to and interviewing prospective witnesses. Indeed, their duty of zealous advocacy usually requires it.

Because Mr. Cotton did not provide sources whose authority cannot reasonably be questioned to support his allegations, there exists a dispute as to existence and substance of the alleged phone calls, making the alleged "witness tampering" and "unauthorized contact" not proper subjects for judicial notice.[16] Accordingly, Mr. Cotton's request for judicial notice is **DENIED**.

### b. Defendant's Motions in Limine

Defendant filed a motion in limine seeking to preemptively exclude or limit the following evidence at trial: (1) Plaintiff's opinions about the diagnosis, prognosis, or cause of his claimed injuries, medical conditions, and symptoms; or about the appropriateness, necessity, or efficacy of any medical treatment or lack of treatment; or about the interpretation of medical records, studies, and analyses; (2) evidence or testimony about Plaintiff's previous excessive forces claims against

---

[15] Mr. Cotton cites Federal Rules of Civil Procedure 26(c), 16(f)(10(C), 37(b), and 18 U.S.C. § 1512(b) in support of his motion for judicial notice. The Court notes that 18 U.S.C. § § 1512(b) is a federal criminal witness tampering statute and does not provide for a private right of action. Mr. Cotton also appears to characterize these alleged interactions as discovery violations, implying that defense counsel was improperly conducting depositions or witness interviews without Mr. Cotton's presence or knowledge. (Doc. 201 at 2.) Because the veracity of these allegations is disputed, the Court declines to address whether such allegations potentially constitute discovery violations.

[16] Even if Mr. Cotton were able to establish his claims as proper subjects for judicial notice, the Court cannot afford relief because he does not specify an appropriate remedy.

any officials other than Defendant Medina; (3) evidence or testimony regarding Defendants' involvement in other lawsuits, claims, or incidents alleging misconduct; (4) evidence that the State may pay the judgment or reimburse Defendants in the event a judgment is rendered against them; (5) evidence of offers to compromise; and (6) evidence or testimony about medical literature, articles, or publications regarding chemical agents.

Mr. Cotton submitted multiple procedural objections, including that Defendant "failed to properly meet and confer with Plaintiff regarding the Motion in Limine" in accordance with the Court's Pretrial Order and that he was "only contacted informally on or about January 5, 2026, with vague references to intent to object to evidence and challenge Plaintiff's credibility." (Doc. 218 at 1-2.) Defendant clearly states in her Motion in Limine that "Defendant makes these motions following the parties' January 5, 2026 telephonic meet and confer, at which the parties discussed the issues outlined below. (Doc. 205 at 1.) Without further evidence to indicate otherwise, the Court finds that the parties satisfied the PTO's meet and confer requirement.

Mr. Cotton also alleges that Defendant engaged in "postage fraud" because the "envelope delivered to Plaintiff bears a Pitney Bowes postage meter dated January 8 while the USPS transfer stamp reads January 6." (Doc. 218 at 2.)[17] On this basis, he asks the Court to "strike or deny" the Defendant's Motion in Limine "due to procedural fraud, failure to confer, and filing irregularities." (Doc. 218 at 3.) Mr. Cotton submitted no evidence of this alleged fraudulent manipulation of postage timelines to "conceal untimely filings." (*Id.*) Furthermore, it is unclear how this argument is relevant to any manipulation or tampering of the documents. The Court notes that Mr. Cotton has previously lodged allegations regarding "irregularities" suggesting "possible post-facto fabrication" which have been summarily rejected by the Court. (Doc. 146; "Order Denying Plaintiff's Motion for Authentication of Document.") For the foregoing reasons, the Court declines to strike or deny Defendant's Motions in Limine on this basis.

---

[17] Mr. Cotton also complains that he received the motion via legal mail on January 9, 2026, leaving him only two days to review, analyze and respond to the Court's objections deadline. (Doc. 218 at 2.) To the extent that Mr. Cotton is suggesting that this "delay" was the result of some nefarious action on the part of Defendant, the Court declines to address this issue, noting further that neither the Court nor Defendant can control the postal system and when and how mailings are processed.

18

### 1.    Nature, Extent, and Cause of Alleged Injuries

Defendant seeks to preclude Mr. Cotton from offering lay opinions or inferences about the nature or extent of his alleged injuries and proper medical treatment. (Doc. 205 at 2.) Mr. Cotton did not submit any objections to this request.

Opinions about medical causation, diagnosis, and prognosis can only be rendered based on specialized knowledge held by an expert qualified by medical education, experience, and training. *See* Fed. R. Evid. 701, 702.  Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is the product of reliable principles and methods, and (2) the witness has applied the principles and methods reliably to the facts of the case.

Defendant anticipates, based on his deposition testimony and previous filings in this case, that Mr. Cotton may attempt to testify that he sustained specific injuries because of the purported incident on March 19, 2022.

Mr. Cotton is not a doctor and has never had any formal medical education or worked in the medical field and therefore lacks competent medical expertise, training, or education to offer opinions or inferences as to the nature and extent of his alleged injuries, or whether any medical conditions diagnosed by medical professionals were caused by the alleged acts in this case. *See* Fed. R. Evid. 701; *see also Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) (lay witnesses not allowed to testify regarding medical diagnosis); *Calloway v. Contra Costa County Jail Corr. Officers,* 2007 WL 134581, *19, (N.D. Cal. Jan. 16, 2007) (sustaining objection to plaintiff's statement that his fistula was damaged by handcuffs on the grounds that it constituted improper lay opinion under Federal Rule of Evidence 701).  Though Mr. Cotton may testify as to what he

experienced and felt due to the alleged incident, he is not competent or qualified to offer any testimony regarding diagnoses, opinions, inferences, or causation. *See* Fed. R. Evid. 701, 702. Accordingly, Defendant's request to preclude Mr. Cotton from offering any opinions or inferences from any medical records or diagnostic studies without a qualified expert is **GRANTED**.

2.      Claims and Defendants Previously Dismissed

Defendant moves to preclude Plaintiff from introducing evidence or eliciting testimony regarding any official other than Defendant Medina who he previously alleged to have violated his Eight Amendment rights. (Doc. 205 at 3.) Mr. Cotton does not oppose this motion. (Doc. 205 at 4.)[18]

Evidence is only admissible at trial if it makes a fact that is of consequence more or less probable. Fed. R. Evid. 401, 402. Under Rule 403, relevant evidence may be excluded if it will cause prejudice, undue delay, a waste of time, or a needless presentation of cumulative evidence in the discretion of the Court. *See Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005). The Court finds that any argument or evidence regarding dismissed claims would be irrelevant and only cause undue prejudice and needless delay. Preclusion of such evidence therefore warranted under Federal Rules of Evidence 401, 402, 602, & 701.

Accordingly, Defendant's request to preclude Mr. Cotton from introducing evidence or eliciting testimony about any official other than Defendant Medina previously alleged to have violated Mr. Cotton's Eighth Amendment rights is **GRANTED**.

3.      Defendant's Involvement in Other Lawsuits, Claims, or Alleged Misconduct

Defendant requests that Plaintiff, and any witness he may call, be precluded from introducing evidence or eliciting testimony about other allegations of misconduct purportedly made against Defendants, including but not limited to, other lawsuits, prison grievances (appeals)

---

[18] In addition to his Eight Amendment failure to protect claim against Defendant Medina, Mr. Cotton previously pleaded an Eight Amendment excessive force claim against various other CDCR officials: Correctional Officer Barajas, Correctional Officer Chacon, Correctional Officer Guerrero, Correctional Officer Sanchez, and Correctional Sergeant Markin. (Docs. 1, 9, 45.) Barajas, Chacon, Guerrero, Sanchez, and Markin's motion for summary judgment was granted, and they were terminated from this action. (Doc. 112.)

that have been filed against them, or other alleged incidents.

Evidence is relevant if it has "any tendency to make a fact more or less probably than it would be without the evidence" and the fact is "of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 404(b) makes evidence of other wrongs or acts inadmissible to provide "the character of a person in order to show action in conformity therewith," but may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); see also Fed. R. Evid. 405(b) (character evidence may be admissible if it is an essential element of the claim).

Under Rule 404(b), "the district court may admit evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and (4) in some cases, is similar to the offense charged." *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010).

Here, evidence of prior or subsequent bad acts is not admissible to prove liability, nor is it relevant to any issue to be tried to the jury in this case. Fed. R. Evid. 404(b). In addition, prior complaints and past litigation against Defendant, including the claims previously brought in this case which proceeded to trial, are also not relevant to this case. Fed. R. Evid. 401, 402. Similarly, other inmates' allegations, grievances, and lawsuits have little probative value because they do not involve the facts of this case. Accordingly, Defendant's request to preclude Plaintiff from presenting or eliciting testimony about any other lawsuits, claims, or incidents alleging misconduct against Defendant is **GRANTED**.[19]

4.     Indemnification

Defendant seeks to preclude Plaintiff from presenting or eliciting testimony that Defendant may be indemnified by the State if judgment is rendered against them. Under Federal Rule of Evidence 411, evidence that a person was insured at the time the harm was suffered by another is

---

[19] Because there are no details provided as to any particular incidents, the Court does not here address any potential for this evidence to be used related to the defendant's character for honesty. However, before any such evidence may be used, the proponent **SHALL** raise the issue with the Court outside the presence of the jury.

inadmissible to prove liability.  Fed. R. Evid. 411.  Such evidence is both irrelevant and prejudicial to the defendant.  *Jamison v. A. M. Byers Co.*, 330 F.2d 657, 661-62 (3d Cir. 1964).  The evidence is prejudicial because a jury is more inclined to deliver a verdict against a defendant if it believes that he is indemnified, as opposed to the defendant alone being required to satisfy the judgment.  *Langley v. Turner's Express, Inc.*, 375 F.2d 296, 297 (4th Cir. 1967).  There is no logical basis for distinguishing between indemnification by a private insurer and indemnification by a state or one of its departments.

Information regarding whether the State would pay a judgment or reimburse Defendants is not relevant to the issues in this case.  Fed. R. Evid. 401.  It does not provide any information as to what happened during the events giving rise to this lawsuit.  Nor does it address the proper measure of damages for Plaintiff's claims.  Even if such information were relevant, it should be excluded because its probative value is substantially outweighed by both a danger of unfair prejudice and a danger of confusing the issues.  Fed. R. Evid. 403.  If the jury learns the State is going to pay any damages award, it may render a larger verdict because it believes the State has deep pockets.  That assumption, which may be made, is not necessarily true.  The State is conditionally required to indemnify its employees, at their request, in litigation arising from the course and scope of the employment.  Cal. Gov't Code § 825.  But the State is not obligated to indemnify its employees for exemplary or punitive damages.  Cal. Gov't Code § 825, subd. (b).  Therefore, presentation of evidence that the State would pay for damages is not only prejudicial, but it would mislead the jury.  Fed. R. Evid. 403. Accordingly, Defendant's request to preclude Plaintiff from presenting or eliciting testimony that Defendant may be indemnified by the State if judgment is rendered against her is **GRANTED**.

5.   Offers to Compromise

Defendants move to preclude Plaintiff from offering or eliciting testimony or mentioning in front of the jury any offers to compromise or statements made during settlement negotiations. (Doc. 205 at 6.) Federal Rule of Evidence 408 provides that evidence of offers to compromise and conduct or statements made during settlement negotiations are inadmissible to prove liability or the amount of a claim, or to impeach a prior inconsistent statement.  The parties participated in

22

settlement negotiations on May 13, 2025. (Doc. 205 at 6.)  The only reason Plaintiff would have to mention these negotiations is to suggest that Defendants are liable because they expressed a willingness to settle this case, or to suggest that Defendants are unreasonable because they refused to settle with Plaintiff.  Rule 408 prohibits use of settlement offers and settlement discussions for this purpose.  Moreover, this evidence is irrelevant to any issue in the case and will unfairly prejudice Defendants.  Fed. R. Evid. 401, 403.  Accordingly, Defendant's request to preclude Plaintiff from offering or eliciting testimony or mentioning in front of the jury any offers to compromise or statements made during settlement negotiations is **GRANTED**.

6.      Scientific or Medical Literature, Articles, or Publications

Defendant seeks to preclude Mr. Cotton from introducing evidence or eliciting testimony about scientific or medical literature, articles, or publications regarding chemical agents. (Doc. 205 at 7.) Defendant argues that such materials constitute inadmissible hearsay and do not fall under the Rule 803(18) exception to hearsay because Mr. Cotton has not offered the testimony of an expert witness who could authenticate such documents. (*Id*. at 7-8).  Based on the Court's prior order denying Mr. Cotton's Motion in Limine to introduce scientific or medical literature, articles, or publications, Defendant's request is **GRANTED**.

7.      Mr. Cotton's Date of Felony Conviction and Length of Sentence

Defendant moves to introduce evidence of prior felony convictions to impeach any testifying witness, including Plaintiff if he chooses to testify. Specifically, Defendant intends to elicit testimony about Plaintiff's and any other prisoner witnesses' dates of conviction and length of incarceration.

Federal Rule of Evidence 609 provides that a testifying witness's character for truthfulness may be attacked by evidence of a criminal conviction for a crime that is punishable by imprisonment for more than one year and for any crime proving a dishonest act or false statement. Fed. R. Evid. 609(a). The rule limits the use of convictions where it has been more than ten years since the conviction or release from confinement for it, whichever is later. Fed. R. Evid. 609(b). "[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction."

23

*United States v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007) (quoting *U.S. v. Rubio*, 727 F.2d 786, 797 n.5 (9th Cir. 1983)). "Generally, only the prior conviction, its general nature, and punishment of felony range are fair game for testing the [witness's] credibility." United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) (quoting U.S. v. Albers, 93 F.3d 1469, 1480 (10th Cir. 1996)) (quoted text in both decisions referred to "defendant's credibility" specifically).

With regard to the length of conviction, "[t]here is some disagreement about whether the length of sentence is covered by Rule 609." *Ioane v. Spjute*, 2020 WL 2793073, at \*6 (E.D. Cal. May 29, 2020). To this end, the Ninth Circuit has suggested that only statements as to existence of felony conviction itself are admissible under Rule 609. *See Osazuwa*, 564 F.3d at 1175 ("[O]nly the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility"). Indeed, courts in this district have generally found that the prejudicial effect of a specific sentence length outweighs any probative value, unless the sentence length bears on a relevant issue. *See Scott v. Palmer*, 2015 WL 13323123, at \*1 (E.D. Cal. Sep. 30, 2015) ("Given that the probative value of the precise length of his sentence is low, the Court finds that the probative value is substantially outweighed by unfair prejudice and Defendants' inquiry shall be limited to establishing that Plaintiff is serving a lengthy prison sentence."); see also *Venable v. Patel*, 2022 WL 902835, at \*1 (E.D. Cal. Mar. 28, 2022) (prohibiting defendants from introducing evidence about the "nature of the crime or the length of sentence being served"); *but see Jacobs v. Alexander*, 2015 WL 8010537, at \*5 (E.D. Cal. Dec. 7, 2015) (permitting evidence of plaintiff's life sentence without parole because the sentence length demonstrated that the plaintiff had no incentive to tell the truth).

Defendants' motion in limine is **GRANTED IN PART** and **DENIED IN PART**. Defendant may introduce the fact that Plaintiff has suffered a felony conviction and that he is currently serving a sentence for that conviction, but they may not admit evidence of the date, name or nature of the crime or the precise length of his sentence as they have not explained what, if any, probative value such information has. *Brown v. Kavanaugh*, 2013 WL 1124301, at \*2 (E.D. Cal. Mar. 18, 2013) ("[D]efense counsel may ask Plaintiff if he has been convicted of a felony, but may not elicit testimony regarding the nature of any such felony conviction.").

24

## IV.    ORDER

Based on the foregoing, the Court **ORDERS**:

1. Plaintiff's Motion for Judicial Notice of Government Publications (Doc. 168) is **DENIED** without prejudice.

2. Plaintiff's motion in limine (Doc. 169) is **DENIED**.

3. Plaintiff's Motion to Strike Contreras' Statements (Doc. 170) is **DENIED**.

4. Plaintiff's Request for Judicial Notice of Docketed Orders/Filings and Order Confirming Discovery is Closed (Doc. 171) is **DENIED**.

5. Plaintiff's Objections to the Court's Pretrial Order and Request to Modify (Doc. 194) is **GRANTED** to the extent that Gino Brewer is now added to the pretrial order and may be called as a witness at trial.

6. Plaintiff's Objection to Defendant's Rule 26 Disclosure and Request to Strike (Doc. 197) is **DENIED**.

7. Plaintiffs' Request for Hearing Under Local Rule 230(I) (Doc. 198) is **DENIED**.

8. Plaintiffs' Emergency Judicial Notice of Witness Tampering and Unauthorized Contact (Doc. 201) is **DENIED**.

9. Defendant's Motion in Limine (Doc. 205) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.

Dated:    **January 19, 2026**

UNITED STATES DISTRICT JUDGE